JS 44 (Rev. 07/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

LAURA A. ROMEU

**(b)** County of Residence of First Listed Plaintiff   Hudson County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, Email and Telephone Number)*
Katherine C. Oeltjen, Esquire; Console Mattiacci Law
110 Marter Avenue, Suite 105; Moorestown, NJ 08057
856-854-4000

## DEFENDANTS

QUINTLESIMS INC.

County of Residence of First Listed Defendant   Morris County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
       Plaintiff

☒ 3  Federal Question
       *(U.S. Government Not a Party)*

☐ 2  U.S. Government
       Defendant

☐ 4  Diversity
       *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** PERSONAL INJURY | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane    ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product        Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Liability    ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &        Pharmaceutical | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| & Enforcement of Judgment | Slander        Personal Injury | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'        Product Liability | | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted | Liability    ☐ 368 Asbestos Personal | | | ☐ 470 Racketeer Influenced and |
| Student Loans | ☐ 340 Marine        Injury Product | | **LABOR** | Corrupt Organizations |
| (Excludes Veterans) | ☐ 345 Marine Product        Liability | ☐ 710 Fair Labor Standards | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment | Liability    **PERSONAL PROPERTY** | Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| of Veteran's Benefits | ☐ 350 Motor Vehicle    ☐ 370 Other Fraud | ☐ 720 Labor/Management | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle    ☐ 371 Truth in Lending | Relations | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 190 Other Contract | Product Liability    ☐ 380 Other Personal | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal        Property Damage | ☐ 751 Family and Medical | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | Injury    ☐ 385 Property Damage | Leave Act | | ☐ 893 Environmental Matters |
| | ☐ 362 Personal Injury -        Product Liability | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information |
| | Medical Malpractice | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | Act |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights    **Habeas Corpus:** | | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 220 Foreclosure | ☐ 441 Voting    ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment    ☐ 510 Motions to Vacate | | 26 USC 7609 | Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/        Sentence | | | ☐ 950 Constitutionality of |
| ☐ 245 Tort Product Liability | Accommodations    ☐ 530 General | | | State Statutes |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -    ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment    ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities -    ☐ 550 Civil Rights | ☐ 465 Other Immigration | | |
| | Other    ☐ 555 Prison Condition | Actions | | |
| | ☐ 448 Education    ☐ 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original
       Proceeding

☐ 2  Removed from
       State Court

☐ 3  Remanded from
       Appellate Court

☐ 4  Reinstated or
       Reopened

☐ 5  Transferred from
       Another District
       *(specify)*

☐ 6  Multidistrict
       Litigation -
       Transfer

☐ 8  Multidistrict
       Litigation -
       Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq. ("Title VII"); New Jersey Law Against Discrimination, as amended, N.J.S.A. 10:5-1, et seq. ("NJLAD")

Brief description of cause:
Plaintiff brings this action against her former employer for wrongful termination

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $
in excess of $100,000

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE   2/8/17

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

### IN THE UNITED STATES DISTRICT COURT FOR
### THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **LAURA A. ROMEU** | : | **CIVIL ACTION NO.** |
| Weehawken, NJ 07086 | : | |
| | : | |
| **Plaintiff,** | : | |
| v. | : | |
| | : | |
| **QUINTILES IMS INC.** | : | **JURY TRIAL DEMANDED** |
| 100 IMS Drive | : | |
| Parsippany, NJ 07034 | : | |
| **Defendant.** | : | |
| | : | |

## COMPLAINT

### I.  INTRODUCTION

Plaintiff, Laura A. Romeu, brings this action against her former employer, Quintiles IMS Incorporated, for discrimination against Plaintiff on the basis of sex, including subjecting Plaintiff to a hostile work environment, and for retaliation against Plaintiff for complaints of same in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.* ("Title VII") and the New Jersey Law Against Discrimination, as amended, N.J.S.A. 10:5-1, *et seq.* ("NJLAD"). Plaintiff was terminated within weeks of complaining of rampant sex discrimination within a segment of Quintiles IMS' business. Plaintiff seeks damages, including economic loss, compensatory and punitive damages, costs and attorneys' fees and all other relief that this Court deems appropriate.

### II.  PARTIES

1.  Laura A. Romeu ("Plaintiff") is an individual and a citizen of the State of New Jersey. She resides in Weehawken, New Jersey.

2.  Plaintiff is female.

3.      IMS Health, Inc. ("IMS") hired Plaintiff on or about July 2, 2015 and terminated her on or about December 31, 2015.

4.      On or about October 3, 2016, IMS Health and Quintiles completed a "merger of equals," to form Quintiles IMS Incorporated ("Defendant").

5.      Defendant is the successor in interest to IMS.

6.      Defendant is a Delaware Corporation with dual headquarters at 83 Wooster Heights Road, Danbury, Connecticut, and 4820 Emperor Boulevard, Durham, North Carolina.

7.      Defendant maintains an office at 100 IMS Drive, Parsippany, New Jersey.

8.      At all times material hereto, Plaintiff worked primarily out of Defendant's office at 100 IMS Drive, Parsippany, New Jersey.

9.      Defendant is engaged in an industry affecting interstate commerce and regularly does business in the state of New Jersey.

10.     At all times material hereto, Defendant acted by and through authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant and in furtherance of business.

11.     At all times material hereto, Defendant was an employer within the meaning of the statute which forms the basis of this matter.

12.     At all times material hereto, Plaintiff was an employee of Defendant within the meaning of the statute which forms the basis of this matter.

III.    **JURISDICTION AND VENUE**

13.     The causes of action which form the basis of this matter arise under the Title VII and the NJLAD.

2

14.     The District Court has jurisdiction over Count I (Title VII) pursuant to 42 U.S.C. §2000e-5 and 28 U.S.C. §1331.

15.     The District Court has supplemental jurisdiction over Count II (NJLAD) pursuant to 28 U.S.C. §1367.

16.     Venue is proper in the District Court under 28 U.S.C. §1391(b).

17.     On or about April 8, 2016, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), complaining of acts of discrimination alleged herein. Attached hereto, incorporated herein, and marked as Exhibit "1" is a true and correct copy of the EEOC Charge of Discrimination (with personal identifying information redacted).

18.     On or about November 10, 2016, the EEOC issued to Plaintiff a Dismissal and Notice of Rights for Plaintiff's EEOC Charge. Attached hereto and marked as Exhibit "2" is a true and correct copy of that notice (with personal identifying information redacted).

19.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## III.   **FACTUAL ALLEGATIONS**

20.     Plaintiff was hired by Defendant on or about July 2, 2015 as Vice President Head of Global Marketing ("HGM"), with her first day worked on or about September 1, 2015.

21.     At the time of her hire, Defendant told Plaintiff that she would shortly become Chief Marketing Officer ("CMO") and report directly to IMS' Chief Executive Officer, Ari Bousbib ("Bousbib") (male).

22.     The HGM role was newly created by Defendant.

23.     Plaintiff's hire into the HGM position, followed a lengthy search by IMS for a qualified candidate.

24.     Defendant told Plaintiff that the position was created to streamline and centralize its marketing efforts while rebranding and repositioning IMS as a technology company.

25.     At all times material hereto, Plaintiff reported to Stefan Linn ("Linn") (male), Senior Vice President. Linn reported to Bousbib.

26.     At all times material hereto, Plaintiff performed her job duties in a highly competent manner.

27.     Defendant's demographics evidence a bias against female employees. Without limitation:

        (a) At all material times hereto, there were not any female Senior Vice President's within IMS' organization;

        (b) At all times material hereto, and to the best of Plaintiff's knowledge, Plaintiff was one of only two female Vice President's at IMS' Parsippany headquarters;

        (c) At all times material hereto, Plaintiff was the most senior woman within IMS' marketing function; and

        (d) At all times material hereto, all senior employees within the Technology Solutions segment of IMS' business (an area within which Plaintiff was tasked with reorganizing the marketing function) were male.

28.     Shortly after she began work with Defendant, Plaintiff was instructed to centralize and streamline the predominantly male marketing team within IMS' Technology Solutions Group ("TSG"), including the efforts of Richie Etwaru ("Etwaru"), Chief Digital Officer, Tal Rosenberg ("Rosenberg"), GM Technology Solutions, and Drew Bustos ("Bustos"), Vice President, Global Marketing Technology.

29.     The TSG members subjected Plaintiff to discriminatory comments and conduct because of her sex. The same included but was not limited to:

(a) Bustos ignored Plaintiff's repeated requests for information essential for the performance of her objectives;

(b) Bustos told Plaintiff during an introductory meeting in London that he refused to work with her;

(c) Etwaru publicly disparaged Plaintiff's knowledge, skill set and experience;

(d) Etwaru called Plaintiff a "land grabber" and,

(e) Plaintiff understood that Rosenberg, acting behind the scenes, encouraged others to block Plaintiff's efforts to perform her job.

30.     The TSG members did not treat male colleagues, superiors or subordinates in the same manner.

31.     On or about November 2, 2015, Rosenberg convened a dinner with several marketers from TSG, including Bustos and Etwaru, and others, including without limitation, Plaintiff, and Andrea Vandeven ("Vandeven") (female).

32.     Upon his arrival at the dinner, Bustos kissed Plaintiff, though he did not greet anyone else at the dinner in this manner.

33.     Bustos' kiss was not welcomed by Plaintiff and she indicated same to him and others at the dinner.

34.     During the dinner, Bustos and Etwaru directed hostile and angry comments to Plaintiff.

35.     When Plaintiff tried to leave, Etwaru, Rosenberg and Bustos demanded that she stay.

36.     Pressured into staying, Plaintiff was subjected to further demeaning and disparaging comments by Etwaru, Rosenberg and Bustos, including, without limitation: "we think you should look for another job"; "we'll help you find one"; and "next time [I'll] steamroller right through you."

37.     Later on the night of November 2, 2015, after the dinner, Plaintiff complained to Clint Wolfe ("Wolfe") (male), Vice President Human Resources, of sex discrimination amid the conduct of Etwaru, Rosenberg and Bustos.

38.     During a follow-up phone call with Wolfe the next day, November 3, 2015, Plaintiff told Wolfe that she was being discriminated against and subjected to a hostile work environment because she is a woman.

39.     Wolfe told Plaintiff he would investigate her complaint.

40.     From November 2, 2015 through November 30, 2015, Plaintiff sent Wolfe a series of emails further detailing her complaint of sex discrimination.

41.     On November 5, 2015, Bustos emailed Plaintiff and admonished her for her behavior at the November 2, 2015 dinner. To the best of Plaintiff's knowledge, Bustos was aware of her complaint to Human Resources ("HR") at the time he sent the email.

42.     Plaintiff advised Wolfe of Bustos' email and stated that Bustos was retaliating against her for complaining to HR.

43.     Following Plaintiff's complaint of discrimination, Linn, for the first time, required Plaintiff to "walk" Wolfe through a draft presentation she was preparing to give at the Executive Leadership Group ("ELG") meeting in London.

44.     Plaintiff is not aware of any scheduled ELG presenter having to "walk" human resources through presentations prior to the meeting. The content of Plaintiff's presentation did not involve any aspect of human resources, nor did Plaintiff report to Wolfe.

45.     Plaintiff learned that though Vandeven had information relevant to the investigation of Plaintiff's complaint, her supervisor, Dan Barton ("Barton") (male) instructed Vandeven not to assist in the investigation as it was going to be "big" and had the potential to create "collateral damage" for anyone who provided information supporting Plaintiff's complaints of sex discrimination.

46.     On or about November 11, 2015, Defendant told Plaintiff that she was no longer allowed to present at the ELG meeting.  Plaintiff was permitted to attend the ELG meeting.

47.     On or about November 12, 2015, Colleen Burns ("Burns") (female), one of Plaintiff's direct reports complained to her that she was subjected to discriminatory conduct because of her sex by members of TSG, including Bustos.

48.     As required by IMS policy, Plaintiff reported Burns' complaint of sex discrimination to Wolfe.

49.     On or about November 16-17, 2015, during the ELG and related meetings in London, Plaintiff learned that Robert Chu, Senior Vice President, Technology Solutions told other Senior Vice Presidents within the organization that Plaintiff "had filed a complaint about my guys."

50.     Chu supported the conduct of his direct reports, including without limitation, Bustos.

51.     When Plaintiff complained to Chu of Bustos' conduct, he was dismissive of her complaints.

52.     On or about November 30, 2015, Wolfe concluded his investigation and told Plaintiff he did not find any evidence of discriminatory conduct.

53.     Subsequently, during a meeting with Bustos, Chu and Linn, Plaintiff was chastised for not being able to "get along" with Bustos and her termination was threatened.

54.     On or about December 16, 2015, Wolfe notified Plaintiff that her employment was being terminated effective December 31, 2015.

55.     Wolfe told Plaintiff that her job was being downgraded to a lower level and was therefore beneath her skill level and experience.

56.     Wolfe did not cite any other reason for her termination.

57.     Wolfe's stated reason is pre-text for discrimination and retaliation.

58.     Following her termination, to the best of Plaintiff's knowledge, her position was not downgraded, but continued to be performed at a Vice President level by an employee who had not complained of sex discrimination.

59.     Plaintiff's sex was a motivating and/or determinative factor in connection with Defendant's discriminatory treatment of Plaintiff, including the hostile work environment to which she was subjected and her termination.

60.     Plaintiff's complaining of discrimination was a motivating and/or determinative factor in Defendant's retaliatory treatment of Plaintiff, including the hostile work environment to which she was subjected and her termination.

61.     Defendant failed to prevent or address the discriminatory and retaliatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of discriminatory and retaliatory conduct.

62.     The retaliatory actions taken against Plaintiff after she complained of discriminatory conduct would have discouraged a reasonable employee from complaining about discrimination.

63.     The discriminatory conduct of Defendant, as alleged herein, was severe and/or pervasive enough to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made Plaintiff believe that the conditions of employment had been altered and that a hostile work environment existed.

64.     As a direct and proximate result of Defendant's discriminatory and retaliatory conduct, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-

9

esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

65.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

66.     No previous application has been made for the relief requested herein.

## COUNT I - TITLE VII

67.     Plaintiff incorporates herein by reference paragraphs 1 through 66 above, as if set forth herein in their entirety.

68.     By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated Title VII.

69.     Defendant acted intentionally, and with malice and/or reckless indifference to Plaintiff's rights, and its conduct warrants the imposition of punitive damages.

70.     As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

71.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

72.     No previous application has been made for the relief requested herein.

## COUNT II – NJLAD

73.     Plaintiff incorporates herein by reference paragraphs 1 to 72 above, as if set forth herein in their entirety.

74.     Defendant, by the above-described discriminatory and retaliatory acts, has violated the NJLAD.

75.     Members of Defendant's upper management had actual participation in, or willful indifference to, Defendant's wrongful conduct described herein, and their conduct warrants the imposition of punitive damages against Defendant.

76.     As a direct and proximate result of Defendant's discriminatory and retaliatory conduct, Plaintiff has sustained the injuries, damages, and losses set forth herein, and has incurred attorney's fees and costs.

77.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory, retaliatory and unlawful acts unless and until this Court grants the relief requested herein.

78.     No previous application has been made for the relief requested herein.

## **RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant:

(a)   declaring the acts and practices complained of herein to be in violation of Title VII;

(b)   declaring the acts and practices complained of herein to be in violation of the NJLAD;

(c)   entering judgment against Defendant and in favor of Plaintiff in an amount to be determined;

(d)   enjoining and restraining permanently the violations alleged herein;

11

(e)   awarding  compensatory damages to Plaintiff to make Plaintiff whole for all past and future lost earnings, benefits, and earning capacity, which Plaintiff has suffered and will continue to suffer as a result of Defendant's discriminatory, retaliatory, and unlawful misconduct;

(f)   awarding compensatory damages to Plaintiff for past and future emotional upset, mental anguish, humiliation, loss of life's pleasures, and pain and suffering;

(g)   awarding Plaintiff costs of this action, together with reasonable attorney's fees;

(h)   awarding punitive damages to Plaintiff;

(i)   awarding Plaintiff such other damages as are appropriate under Title VII, and the NJLAD; and

(j)   granting such other and further relief as this Court deems appropriate.


CONSOLE MATTIACCI LAW, LLC


Dated:   February 8, 2017          BY:

Stephen G. Console (040281983)
Kate C. Oeltjen (57372013)
110 Marter Avenue, Suite 105
Moorestown, NJ 08057
Telephone: (856) 854-4000
Facsimile: (215) 565-2852

*Attorneys for Plaintiff, Laura A. Romeu*

Exhibit "1"

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See privacy statement before consolidating this form. | ☐ FEPA<br>X EEOC | |

STATE OR LOCAL AGENCY:

| NAME (Indicate Mr., Ms., Mrs.)<br>**Laura Romeo** | HOME TELEPHONE NUMBER *(Include Area Code)* |
|---|---|

| STREET ADDRESS ███████ | CITY, STATE AND ZIP<br>**Weehawken, NJ 07086** | DATE OF BIRTH |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OF LOCAL GOVERNMENT WHO DISCRIMINATED AGAINST ME (If more than one than list below)

| NAME<br>**IMS Health Incorporated** | NUMBER OF EMPLOYEES.<br>MEMBERS  ~ 1000 | TELEPHONE (Include Area Code)<br>**973-316-4000** |
|---|---|---|

| STREET ADDRESS<br>**100 IMS Drive** | CITY, STATE AND ZIP<br>**Parsippany, NJ 07034** | COUNTY<br>**Morris** |
|---|---|---|

| CAUSE OF DISCRIMINATION *(Check appropriate box(es))*<br>☐ Race  ☐ Color   X Sex  ☐ Religion  ☐ National Origin<br>   X Retaliation   ☐ Age  ☐ Disability  ☐ Other *(Specify)* | DATE DISCRIMINATION TOOK PLACE<br>*Latest  12/31/15* |
|---|---|

1. Relevant Work History

I was hired by IMS Health ("IMS" or "Respondent") on or about July 2, 2015 as Vice President and Head of Global Marketing. I began work for Respondent on or about September 1, 2015. I was the first person to hold my position and it was created by IMS purportedly to streamline and centralize IMS' marketing efforts while rebranding and repositioning IMS as a technology company. Accordingly, I was instructed to identify all IMS employees performing marketing duties across IMS' organization and attempt to bring their efforts under a single marketing platform. The Technology Solutions segment of Respondent's business was specifically targeted by my superiors as an area in need of centralization.

Upon information and belief, IMS had searched for a qualified person to serve as Vice President and Head of Global Marketing for several years. At the time of my hire, I was told that I would shortly become Chief Marketing Officer and report directly to IMS' CEO, Ari Bousbib, (male) ("Bousbib").

| I want this charge filed with both the EEOC and the State or local Agency, if any  I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures | NOTARY - (when necessary for State and Local Requirements)<br><br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge information and belief |
|---|---|
| I declare under penalty or perjury that the foregoing is true and correct.<br><br>*Laura Romeo*<br>Date  4/8/16  Charging Party *(Signature)* | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day Month, and year) |

Romeu, Laura v. IMS Health
EEOC CHARGE OF DISCRIMINATION
Page 2 of 6

From my hire, I reported to Stefan Linn, (male) ("Linn"), Senior Vice President. Linn reported to Bousbib. I had a six direct-reports, including, Colleen Burns, (female) ("Burns"), Director of Marketing. At all material times, I performed my duties in a consistently exemplary manner. Tasked with centralizing a fractured and disorganized marketing system, I immediately set to researching, analyzing and reorganizing IMS' marketing efforts. By way of example only, I received positive feedback from multiple people, including, but not limited to, Clint Wolfe, (male) ("Wolfe") Vice President, Human Resources, within the first three months of my employment with Respondent. He told me that he had heard only good things about my efforts at IMS. In addition, I was invited to present at IMS' November, 2015, Executive Group Leadership ("ELG") meeting in London.

2. **Harm Summary**

    A. I believe that Respondent has discriminated against me because of my sex and retaliated against me for complaining of sex discrimination. Evidence of discriminatory and retaliatory conduct includes, but is not limited to, the following:

        1. Respondent's demographics evidence a bias against female employees. By way of example:

            a. During my employment, every Senior Vice President within Respondent's organization was male;

            b. Upon information and belief, I was one of only two female Vice Presidents at Respondent's Parsippany, New Jersey location;

            c. I was the most senior female employee within Respondent's marketing function; and,

            d. Within the Technology Solutions segment of Respondent's business, all of the senior marketing employees, whom I was tasked with reorganizing—though none reported to me or my supervisor—were male.

        2. The marketing team from Technology Solutions (all male) including Richie Etwaru, ("Etwaru"), Chief Digital Officer, Tal Rosenberg, ("Rosenberg"), GM Technology Solutions, and Drew Bustos, ("Bustos"),

**Romeu, Laura v. IMS Health**
**EEOC CHARGE OF DISCRIMINATION**
**Page 3 of 6**

Global Marketing, resisted my efforts at centralization and routinely disparaged me in a hostile and aggressive manner. They did not treat male colleagues, superiors or subordinates, in the fashion that they treated me. For example, and without limitation:

   a.  Bustos ignored my repeated requests for information such as organizational charts essential for successful performance of my directives from Linn;

   b.  Bustos told me during an introductory meeting in London that he was not going to work with me;

   c.  Etwaru questioned my knowledge base and skill set, telling me that I was a "land grabber."

3.  On or about November 2, 2015, Rosenberg convened a dinner with several marketers from Technology Solutions, including Bustos and Etwaru, as well as other marketing personnel at a restaurant a significant distance from my Parsippany, New Jersey office. Other attendees included, but were not limited to, Simone Bailey, (female) ("Bailey"), Andrea Vandeven, (female) ("Vandeven"), and Dan Barton, (male) ("Barton").

4.  Upon arrival at the restaurant, Bustos greeted me by kissing me. He did not greet any other person at the table in this manner, including Bailey or Vandeven. I was taken aback by Bustos' unwanted touching and made it known to him that I was alarmed and upset.

5.  During the dinner, Bustos and Etwaru directed hostile and angry comments to me and Vandeven.  Feeling ambushed I ordered a car service and attempted to leave.

6.  Etwaru, Rosenberg and Bustos demanded that I stay to finish the "conversation." I remained and was further subjected to disparaging comments. For example, without limitation, Etwaru stated:

      a.  "I don't think you have the chops to do this";

      b.  That "next time" he would "steamroller right through me";

**Romeu, Laura v. IMS Health**
**EEOC CHARGE OF DISCRIMINATION**
**Page 4 of 6**

    c. "We think you should look for another job"; and,

    d. "We'll help you find one."

7. Etwaru did not speak in the same manner to any male employee of Respondent at the dinner. Following the dinner, I learned that Etwaru had a history of harassing, berating and belittling female colleagues.

8. Later on November 2, 2015, I emailed Wolfe about the dinner and complained about the discriminatory nature of Etwaru, Bustos and Rosenberg's behavior. During a follow-up phone call on November 3, 2015, I told Wolfe that I felt I was being discriminated against, and subjected to hostile treatment, because I am a woman.

9. Wolfe indicated that he would investigate my complaint of discrimination. I sent Wolfe a series of emails from November 2, 2015 to November 30, 2015 further detailing my complaint.

10. On or about November 3, 2015, I emailed Linn and complained about the discriminatory conduct to which I was subjected at the dinner.

11. On or about November 5, 2015, Bustos emailed me admonishing me for my behavior at the November 2, 2015 dinner. I immediately complained to Wolfe via e-mail that Bustos was retaliating against me for complaining to HR.

12. Following my complaint of discrimination to Wolfe, Linn instructed me to "walk" Wolfe through my presentation for the upcoming ELG meeting. Linn and I had been meeting for weeks to prepare the presentation and Linn knew that it was not complete. I had never heard of anyone being asked to show a presentation to Human Resources before.

13. I learned that Vandeven was told by her supervisor, Barton, not to assist in the investigation into my complaint as it was going to be "big" and had the potential to create "collateral damage."

14. On or about November 11, 2015, I was informed that I would no longer be presenting at the Executive Leadership Group Meeting in London; though I remained allowed to attend.

**Romeu, Laura v. IMS Health**
**EEOC CHARGE OF DISCRIMINATION**
**Page 5 of 6**

15. On or about November 12, 2015, consistent with internal IMS policy, I reported to Wolfe that my direct report, Burns, complained to me of hostile and discriminatory treatment because of her sex during a meeting with members of Technology Solutions including Bustos.

16. On or about November 16-17, 2015, during the ELG and related meetings in London, I learned that Robert Chu, Senior Vice President, Technology Solutions told other Senior Vice Presidents that I had "filed a complaint about my [his] guys." I understood Chu to be referring to my confidential complaint to HR about the discriminatory conduct of Etwaru and others. I also learned that Chu indicated that because I had complained to Human Resources about the discriminatory conduct of his direct reports—in particular Etwaru and Bustos—that he would not instruct his direct reports to "back off" of me.

17. On or about November 20, 2015, I sent Wolfe an email asking about the status of Burns' complaint of discrimination.

18. On or about November 30, Wolfe told me that he was concluding his investigation into my complaint of discrimination and had found no evidence of same.

19. Later, during a separate meeting with Bustos and Linn, I was chastised for not being able to "get along" with Bustos and threatened with termination.

20. On or about December 16, 2015 Wolfe told me that I was being terminated. Wolfe stated that my job was being downgraded to a lower level and was therefore "not the job I had come here to do." Wolfe further stated that the new role would be performed by someone junior to me.

21. My last day with IMS was December 31, 2015, although Respondent terminated my access to company email one day prior.

22. Following my termination, my duties and responsibilities have been performed by Trudy Stein ("Stein"), Vice President and Chief of Staff to the CEO. She and I were equals during my employment at IMS. To the best of my knowledge, Stein has not complained of sex discrimination.

**Romeu, Laura v. IMS Health**
EEOC CHARGE OF DISCRIMINATION
Page 6 of 6

B. <u>Respondent's Stated Reason</u>

Respondent has not provided a legitimate, non-discriminatory reason for the discriminatory and retaliatory treatment to which I have been subjected. The stated reason for my termination, a downgrade in my position, is pre-textual. No other reason has been provided.

C. <u>Statutes and Bases of Allegations</u>

I believe Respondent has discriminated against me because of my sex and retaliated against me for complaining of sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §2000(e) *et seq.* ("Title VII), and the New Jersey Law Against Discrimination, as amended, N.J.S.A. 10:5-1, *et seq.* ("NJLAD").

Exhibit "2"

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: Laura Romeu | From: Philadelphia District Office |
|---|---|
| Weehawken, NJ 07086 | 801 Market Street<br>Suite 1300<br>Philadelphia, PA 19107 |

☐ On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 530-2016-02402 | Legal Unit,<br>Legal Technician | (215) 440-2828 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u>** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Spencer H. Lewis, Jr.,
**District Director**

11/10/16
*(Date Mailed)*

Enclosures(s)

cc:   Rosemary Alito, Esq.
Practice Area Leader
K&L GATES LLP - LABOR EMPLOYMENT AND
WORKPLACE SAFETY
One Newark Center- 10th Floor
Newark, NJ 07012

Karen C. Oeltjen, Esq.
CONSOLE LAW OFFICES
1525 Locust Street
9th Floor
Philadelphia, PA 19102